## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANISH MANZOOR<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 21-2126 (CKK) |

## MEMORANDUM OPINION
(May 3, 2022)

In this visa case, Plaintiff Danish Manzoor ("Plaintiff" or "Manzoor") seeks injunctive and mandamus relief ordering officials of the United States Department of State ("State Department") and the United States Department of Homeland Security ("DHS") to more expeditiously process a Form I-130 immigrant visa for his spouse, Faryal Ashraf ("Beneficiary"), pursuant to the Administrative Procedure Act's ("APA") bar on "unreasonabl[e] delay." 5 U.S.C. § 706(1).  In addition to his APA claim, Plaintiff alleges a procedural due process claim, alleging unconstitutional delay, and an equal protection claim under the Fifth Amendment, alleging discriminatory treatment.

Because DHS has already conveyed Plaintiff's visa application for processing to the State Department's National Visa Center ("NVC"), the Court shall **DISMISS** as moot the complaint as against the DHS defendants.  The Court shall also **DISMISS** the remaining claims as against the State Department defendants for failure to state a claim. Accordingly, and upon review of the

1

pleadings,[1] the relevant legal authority, and the record as a whole, the Court shall **GRANT** Defendants' [6] Motion to Dismiss.

## I. BACKGROUND

### A. Statutory Background

A lawful permanent resident applying for a visa for a family member must comply with a multi-step process governed by the Immigration and Nationality Act ("INA"). First, the applicant must submit a Form I-130 petition with the U.S. Citizenship and Immigration Service ("USCIS"), an agency within DHS. *See* 8 C.F.R. § 204.1(a)(1). In reviewing the I-130 petition, USCIS has applied the Controlled Application Review and Resolution Program ("CARRP") to some, but not all, applications. *See Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 300 (D.D.C. 2017). CARRP is a program, allegedly ongoing, that purportedly "flags" some visa applicants for additional review based on national security concerns. *See id.* at 301. If DHS grants the I-130 petition it must then send the application to the National Visa Center ("NVC"), a branch of the State Department, for further processing, whether it has employed CARRP or not. *See* 8 C.F.R. § 204.2(a)(3).

In this second stage of the process, NVC receives the file from USCIS and imposes a waiting period until an application becomes "current," permitting review.[2] At that time, the

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Complaint ("Compl."), ECF No. 1;
- Defendants' Motion to Dismiss ("Mot."), ECF No. 6;
- Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Opp."), ECF No. 7; and
- Defendants' Reply in Support of Defendant's Motion to Dismiss ("Reply"), ECF No. 8.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] *See* U.S. State Dep't, "Immigrant Visa Process Step 2: Begin National Visa Center (NVC) Processing," available at https://travel.state.gov/content/travel/en/us-visas/immigrate/the-

applicant must then submit additional information on a new Form DS-260.  *See* 22 C.F.R. § 42.67(a).  Only once that additional form is submitted can NVC move to the final step—an interview between the recipient of the visa and a United States consular officer.  22 C.F.R. § 42.67(a)(1), (a)(3).  After the interview, "the consular office must [either] issue [or] refuse the visa."  22 C.F.R. § 42.81(a).

### B. Factual Background

Plaintiff Danish Manzoor is a lawful permanent resident of the United States.  Compl. at ¶ 1.  Plaintiff's spouse, Faryal Ashraf, is a citizen and resident of Pakistan.  *Id.* at ¶ 2.  On April 25, 2019, Plaintiff filed a Form I-130 visa petition on behalf of his spouse, paying all applicable visa and filing fees.  *Id.* at ¶¶ 15–16.  USCIS approved the Form I-130 petition on June 11, 2020, completing its portion of the processing of the visa petition.  *Id.* at ¶ 17.  The visa petition was then transferred to the State Department's National Visa Center ("NVC"), where it may or may not remain.[3]  *Id.* at ¶ 18.  The U.S. Embassy in Islamabad, Pakistan has not yet conducted an interview of Ashraf.  *Id.* at ¶ 19.

---

immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last accessed April 29, 2022).

[3] Plaintiff alleges "[u]pon information and belief," that the NVC has completed its processing of the petition and has "sent [the petition] to the U.S. Embassy in Islamabad, Pakistan for an interview."  Compl. at ¶ 18.  Defendants dispute this and allege that Plaintiff's visa petition still remains at the NVC for processing.  According to the State Department's official Consular Electronic Application Center, Plaintiff's petition still remains at the NVC.  *See* U.S. State Dep't, "Consular Electronic Application Ctr., Visa Status Check," https://ceac.state.gov/CEACStatTracker/ Status.aspx (using case number "ISL2020677035").  The Court may take judicial notice of information posted on official government websites without converting the motion into one seeking summary judgment.  *See, e.g.*, *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).  Where exactly Plaintiff's application is in State Department bureaucracy is largely beside the point, however, as his claims as against any State Department defendant fail as a matter of law.

In March of 2020, due to the outbreak of the global COVID-19 pandemic, the State Department suspended all visa services in all U.S. embassies and consulates around the world. *See* Mot. at 4.  Beginning in July of 2020, the State Department "began a phased resumption of routine visa services," operating at a limited capacity in many locations, including in Pakistan. *Id.*  Due to COVID-19 and the accompanying disruption of visa services, the State Department's ability to process visa applications and conduct interviews has been significantly affected, leading to an increased backlog of cases. *Id.* at 4–5.  For example, in January of 2020, there were approximately 75,000 immigrant visa cases awaiting resolution before the NVC.  *See* U.S. State Dep't, "Update on U.S. Immigrant Visa Processing," https://www.state.gov/briefings-foreign-press-centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates/ (Mar. 9, 2021).  By contrast, a little over a year later in February 2021, the number of cases increased more than sixfold to 473,000.  *Id.*

Plaintiff initiated this case on August 9, 2021, roughly fourteen months after his visa petition was transferred to the NVC for processing.  Defendants now move under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively.  The motion to dismiss is now fully briefed and ripe for this Court's review.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced

in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. For Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007).

However, "the factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001).  A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. DISCUSSION

**A. Claims Against DHS**

Defendants first move to dismiss the complaint as against the DHS Defendants on standing and mootness grounds.  *See* Mot. at 6–7; Reply at 2–5.  Defendants argue that because Plaintiff's visa application is currently with NVC for review, there is no relief the Court could grant against DHS.  *See* Mot. at 6–7.  That is, DHS, through USCIS, has completed their review of Plaintiff's petition and is no longer involved in any manner with the processing of the visa.  Article III requires that Plaintiff demonstrate, *inter alia*, that his injury actually be redressable by a ruling in his favor.  *Lujan*, 504 U.S. at 568.  "Where an agency has accorded all relief it can in a visa case,

claims against that agency are moot."[4]  *Haider v. United States Dep't of Homeland Sec.*, No. CV 20-3808, 2021 WL 5630794, at *2 (D.D.C. Dec. 1, 2021) (CKK); *accord Jafarzadeh*, 270 F. Supp. 3d at 303.  Accordingly, the Court shall dismiss Plaintiff's complaint as against USCIS and Ur M. Jaddou, in her official capacity as Director of the United States Citizenship and Immigration Services.

### B. Administrative Procedure Act Claim (Count I)

The APA requires that agencies "within a reasonable time . . . shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  If agencies fail to do so, courts may "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).  The standard by which the Court reviews agency inaction under the Mandamus Act, 28 U.S.C. § 1361, is the same standard applied to claims under § 706(1) of the APA.  *Jingjing v. Mayorkas*, No. 20-cv-654, 2021 WL 2115209, at *3 (D.D.C. May 25, 2021).

To determine whether Plaintiffs have sufficiently alleged that agency action has been "unreasonably delayed," the Court applies the factors laid out in *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

---

[4] Because Plaintiff lacks standing to pursue claims against the DHS Defendants, the Court need not fully address all of Plaintiff's assorted arguments regarding why an exception to the mootness doctrine applies here.  That being said, Plaintiff's arguments are meritless.  For one, Plaintiff does not seek money damages, but attorney's fees and costs, which "cannot of [their] own accord keep alive any merits claim that would otherwise be moot."  *Willson v. Comm'r*, 805 F.3d 316, 321 n.2 (D.C. Cir. 2015).

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted).

Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Moreover, the D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Id.* (internal citations and quotation marks omitted). The Circuit therefore has refused to grant relief where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

### 1. *TRAC* Factors One & Two

The D.C. Circuit has explained that the first TRAC factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second TRAC factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The inquiry centers on "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Because Congress has provided no statutory timeframe indicating how quickly it wants the State Department to process visa applications, *TRAC* factor two is inapplicable.

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to review of visa petitions by adjudicating applications in the order they were filed. *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (TNM); *Muvvala v. Wolf*, No. 20-cv-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). In most visa cases seeking to expedite review, therefore, the question is whether that general rule of review has resulted in an unreasonable delay. *E.g.*, *Xiaobing v. Blinken*, 544 F. Supp. 3d 1, 11–12 (D.D.C. 2021) (TJK) (holding that effects of COVID-19 made delay in visa adjudication reasonable).

The applicable case law fails to support Plaintiff's claim that the State Department has unreasonably delayed the processing of his I-130 visa petition. Courts in this Circuit have routinely held that delays similar in length to Plaintiff's are not unreasonable. *See, e.g.*, *Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (ABJ) ("[M]any courts evaluating similar delays [i.e., 25 months] have declined to find a two-year period to be unreasonable as a matter of law."); *Bagherian*, 442 F. Supp. 3d at 95 ("[T]he twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances."); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (RJL) (two-year delay "does not typically require judicial intervention"). Some courts have held that delays of even three or more years may be reasonable. *See, e.g.*, *Fangfang v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

Furthermore, none of the cases cited by Plaintiff support his contention that the Defendant's delay in his case is "unreasonable."  To the contrary, every cited case—none of which come from either this jurisdiction or past decade—involved a delay, often without explanation, of greater than two years.  *See, e.g.*, Opp. at 10 (citing *Ren v. Mueller*, No. 6:07-CV-790-Orl-19-DAB, 2008 WL 191010, at * 11 (M.D. Fla. Jan. 22, 2008) (four-year delay)).  Plaintiff does not explain how any of these cases support his claim that a delay of less than two years in the middle of a global pandemic is "unreasonable."  Perhaps sensing the lack of supporting precedent, Plaintiff contends that he needs to only *allege*, and not *prove*, "specific facts that indicate unreasonable delay."  *Id.*  While certainly true as a matter of law that at this stage Plaintiff is not required to *prove* anything, he is nevertheless required to demonstrate that it is at least plausible that Defendants have unreasonably delayed in processing his visa application.  *See Twombly*, 550 U.S. at 570.  That he has failed to do.

### 2. TRAC Factor Four

Next, the Court finds that the fourth *TRAC* factor—"the effect of expediting delayed action on agency activities of a higher or competing priority"—weighs against Plaintiff.  *TRAC*, 750 F.2d at 80.

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  *Mashpee*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d at 75); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications").  In other words, the

Court must consider whether expediting Plaintiff's application would "harm other agency activities of equal or greater priority." *Nibber v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-3207, 2020 WL 7360215, at *7 (D.D.C. Dec. 15, 2020) (BAH).  Any such order interferes with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

As this Court explained in *Desai v. USCIS*, No. 20-1005, 2021 WL 1110737 (D.D.C. Mar. 22, 2021) (CKK), the fourth *TRAC* factor weighs in favor of the government where an order directing the agency "to process Plaintiff's application would still put him ahead in the queue of those *similarly situated*." *Id.* at *7 (emphasis original); *see also Palakuru*, 521 F. Supp. 3d at 53 ("Granting [Plaintiff] relief here would advance his petition in front of others similarly situated— with respect to the availability of visas and investment in a regional center—who filed their petitions earlier.").

Such is the case here.  Were the Court to grant Plaintiff the relief he is seeking, the Court would be doing little more than forcing Defendants to let him cut in line in front of others, simply because he sued in this Court.  It makes little sense to incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications. Absent compelling circumstances, such a judicial reordering of the line of visa applicants is inappropriate.

Moreover, in light of the COVID-19 pandemic, the Court is inclined to grant "deference to the State Department's priority-setting and prioritization of 'mission critical' functions." *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (BAH).  As the court in *Tate* explained, in a case similar to the instant one, "Defendants face an extraordinary backlog of visas across the world . . . [and] [g]iven this backlog and the continued suspension of routine operations around the world

due to the pandemic, defendants correctly posit that deference to the State Department's priority-setting and prioritization of 'mission critical' functions is necessary." *Id.*  An order compelling the State Department to move Plaintiff to the front of the line, therefore, risks upsetting the priorities and considerations of the State Department at a time where the State Department has been tremendously disrupted by COVID-19, particularly in foreign jurisdictions.

Once again, none of the cases cited by Plaintiff help to support his position.  While Plaintiff claims that "many courts have already considered and rejected Defendants' primary argument," Opp. at 11, regarding *TRAC* factor four, Plaintiff cites to no cases addressing the impact of COVID-19 on visa application processing within the State Department.  Indeed, Plaintiff's out-of-circuit and out-of-date cases concern only the wholly inapposite scenario where the Government claimed to have a general lack of resources to more quickly adjudicate visa applications.  *See id.* Plaintiff's contention that COVID-19 has caused only a "generic global delay[]" is unavailing. While it may be a valid proposition that the Government cannot prevail on *TRAC* factor four through a generic recitation of lack of sufficient resources, such a case is hardly present here.  The Defendants' proffered reason for the delay in visa processing stems entirely from the extended shutdown of visa processing due to COVID-19 and the accompanying reduced ability to process applications.  In other words, the problem is not lack of resources, but a global pandemic.  And as explained *supra*, courts have found the Defendants' argument to be eminently reasonable and have deferred to the agency's considered judgment in determining how to balance its priorities.

It is well within the discretion of the State Department to determine how it intends to ensure the health and safety of its own personnel tasked with processing visas during a pandemic without unnecessary judicial intrusion. *TRAC* factor four, therefore, weighs in favor of the Government.

### 3. *TRAC* Factors Three & Five

The third and fifth factors are often considered together, and require the Court to consider Plaintiffs' interests, health, and welfare. *Ghadami*, 2020 WL 1308376, at *9. In general, concerns about separation from family or an inability to supervise an economic investment are insufficient to weigh in favor of the plaintiff. *See, e.g.*, *Desai*, 2021 WL 110737 at *7 (economic interests); *Thakker v. Renaud*, No. 20-1133 (CKK), 2021 WL 1092269, at *7–8 (D.D.C. Mar. 21, 2021) (family separation); *Palakuru*, 521 F. Supp. 3d at 53 (same). In his Complaint, Plaintiff alleges that the delay in processing his wife's visa application "has taken a toll on [his] physical and mental health . . . [and] [h]e needs his wife's presence and support." Compl. ¶ 40. In his Opposition, Plaintiff generically states that the delay has "harmed him and his family." Opp. at 12.

While the Court is sympathetic to Plaintiff's undoubtedly genuine desire to be reunited with his spouse, such broad allegations, however, are insufficient under *TRAC* factors three and five. Therefore, the Court concludes that, based on the information in the pleadings, Plaintiff falls short of meeting the third and fifth TRAC factors of showing that human health and welfare are at stake or that there are other interests prejudiced by the agency's delay. *See Nohria v. Renaud*, No. 20-CV-2085, 2021 WL 950511, at *6 n.5. (D.D.C. Mar. 14, 2021).

### 4. *TRAC* Factor Six

The sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. Plaintiff admits that he "does not allege that Defendants' delay was caused by bad faith *per se*," Opp. at 12, and so this factor is not an issue in this case.

Because the *TRAC* factors all either weigh in favor of the Defendants or are neutral, the Court holds that Plaintiff's claim of unreasonable delay under the APA fails as a matter of law and

therefore dismisses that count.  Accordingly, because Plaintiff's APA claim fails, his mandamus action alleging unreasonable delay necessarily fails as well and is hereby dismissed.  *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) ("Because Plaintiffs' APA claim fails, mandamus is not available.").

### C. Due Process Claim (Count II)

Plaintiff next contends that Defendant's delay in processing his Form I-130 visa on behalf of his wife violates his right "to fundamental fairness in administrative adjudication" as "protected by the Due Process Clause of the Fifth Amendment to the United States Constitution," by causing him a "loss of consortium" between himself and his spouse.  Compl. at ¶¶ 37, 39.  Although not explicitly stated, Plaintiff appears to make both a procedural due process and a substantive due process argument.  As to the former, Plaintiff's argument seems to be that Defendants have violated his due process rights by not affording him constitutionally adequate procedures in the visa application process, presumably due to the processing delay.  As to the latter, Plaintiff contends that the delay in granting his wife's visa has caused him constitutional harm by denying him his right to family unity and integrity.  Neither of Plaintiff's Due Process arguments have merit and the Court will accordingly dismiss them.

Plaintiff's substantive due process argument is untenable.  The Supreme Court has instructed that liberties protected by the due process clause "must be defined in a most circumscribed manner, with central reference to specific historical practices."  *Obergefell v. Hodges*, 576 U.S. 644, 671 (2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). The liberty interest claimed here—the right to have a spouse's visa application granted—is not yet sufficiently "rooted in this Nation's history and tradition."  *Glucksberg*, 521 U.S. at 721 (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977)).  As the Court explained decades ago,

14

"an alien who seeks admission to this country may not do so under any claim of right. Admission of aliens to the United States is a privilege granted by the sovereign United States Government." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).  Plaintiff has not indicated any authority to suggest otherwise.

Plaintiff's alleged liberty interest is premised predominantly upon the Supreme Court's decision in *Obergefell*, finding a substantive due process right to state-sanctioned same-sex marriage.  *See* Opp. at 13 (citing *Obergefell*, 576 U.S. at 671).  Were the Defendants prohibiting Plaintiff from marrying his spouse, that would be another case.  But where, as here, the government is enforcing a duly enacted statute concerning immigration, Plaintiff needs to demonstrate that he has a protected fundamental liberty interest to have his spouse's visa application approved at a quicker pace.  The Supreme Court has explicitly foreclosed such an argument, *Kerry v. Din*, 576 U.S. 86, 88 (2015) (holding no substantive due process right for noncitizen to live in the United States with U.S. citizen spouse), as have numerous courts of this jurisdiction, *Colindres v. U.S. Dep't of State*, --- F. Supp. 3d ---, 2021 WL 5906041, at *6-7 (D.D.C. Dec. 14, 2021) (collecting cases).   In the face of such precedent, Plaintiff's substantive due process claim fails.

Because Plaintiff's substantive due process argument fails, so too does his procedural due process argument.  To succeed on a procedural due process claim, "'a plaintiff must show that there was a liberty or property interest at stake'" first.  *Mahmood v. DHS*, 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011)).  If so, then the constitution requires, and only requires, "a meaningful opportunity to present" a case.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Mahmood*, 2021 WL 5998385, at *9.  Because, as discussed above, there is no property right in an immigrant visa and there is a process governed by a rule of reason whereby applicants may petition the federal government for a visa,

there can be no procedural due process violation here.  *See Smirnov*, 806 F. Supp. 2d at 12.  Accordingly, Plaintiff's Fifth Amendment claims fail as a matter of law.

### D. CARRP Claims

Plaintiff also requests the Court to declare CARRP to be unlawful, to enjoin Defendants from applying CARRP, and to order Defendants to rescind CARRP for failure to satisfy APA notice-and-comment rulemaking.  Compl. at ¶¶ 2–4.  However, because, as Plaintiff alleges, CARRP is a policy of DHS and not the State Department, and the DHS defendants have been dismissed from this lawsuit pursuant to 12(b)(1) on jurisdictional grounds, any retrospective claim against DHS is moot.  *Haider*, 2021 WL 5630794, at *4.  Similarly, any prospective claim is constitutionally unripe.  *Id.* at *5.

### IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' [6] Motion to Dismiss and **DISMISS** Plaintiff's [1] Complaint.  An appropriate order accompanies this Memorandum Opinion.

Date: May 3, 2022

                                            /s/

COLLEEN KOLLAR-KOTELLY
United States District Judge